NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0337n.06

No. 25-5587

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 28, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff-Appellee, ) | |
| ) | ON APPEAL FROM THE |
| v. ) | UNITED STATES DISTRICT |
| ) | COURT FOR THE MIDDLE |
| JUSTIN D. CARROLL, ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. ) | |
| ) | OPINION |
| ) | |

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

LARSEN, Circuit Judge. Justin Carroll met three 14-year-old girls online. Over the course of several months, they exchanged sexually explicit messages, photos, and videos. A jury convicted him of, among other charges, sexual exploitation of a child and the enticement of a child. He appeals these two convictions. For the following reasons, we AFFIRM.

I.

In March 2021, the Nashville FBI office received a package containing a teddy bear and Valentine's candy. After some inquiries, the FBI determined that a 14-year-old girl, Jane Doe, had sent the package for "her boyfriend," Justin Carroll, a 38-year-old FBI electronics technician. An investigation revealed that Carroll and Jane had engaged in a months-long exchange of sexually explicit messages and photos and that Carroll had similar exchanges with two other 14-year-old girls.

This appeal relates only to Carroll's first victim: Jane. Jane is developmentally delayed, suffering from neurological and emotional disorders. At the time of these events, she was attending a special-education school. Jane's mother, Gina, generally did not allow Jane to have access to a laptop. But, in 2020, the pandemic required Jane to use one for school. In the summer of that year, Jane, residing in Rhode Island, met Carroll, who lived in Tennessee, in an online chatroom.

Over the next several months, Jane and Carroll used various platforms to exchange sexually explicit messages and images of themselves. The two discussed "cumming" and watching each other masturbate. R. 174, Trial Tr., PageID 1166. Jane sent photos of her bare breasts and vagina while Carroll sent images of his penis. The two also conducted video calls with each other that seemingly involved Jane masturbating. And Carroll sent Jane videos of himself masturbating.

On February 3, Jane emailed Carroll from her school account, saying, "I'm only 14, not 18. I'm sorry. When I said I love and you [sic] wanted to spend the rest of my life with you, I meant it all. I'm crying doing this. I'll never love anyone else ever again. You're my one true love." R. 172, Trial Tr., PageID 712–14. Soon after, she said the email was "a prank." *Id.* at 716. Carroll responded: "You act 14, ha. I don't care what your age is." *Id.* He continued, "[y]ou're beautiful and special to me. You can spend the rest of your days with me." *Id.* at 713.

At the beginning of March, Jane sent a package to Carroll's place of employment: the Nashville FBI office. The package bore no recipient name but included the sender's name and a Rhode Island return address. So, the FBI obtained contact information related to the return address, called, and left a message. Jane's mother, Gina, received the message, immediately spoke with her daughter, and looked through her accounts. In doing so, she discovered Jane's correspondence with Carroll, finding "[a] lot, a lot, a lot of inappropriate conversations, pictures, both male and

female, pictures of [Jane]. . . . And just a lot of really explicit content, sexually explicit content." R. 171, Trial Tr., PageID 644. She could tell that some of the nude and sexually explicit photos were of Jane. When she discussed the messages with Jane, her daughter referred to Carroll as "her boyfriend." *Id.* at 668.

Gina emailed Carroll on March 16, telling him that Jane was 14 and instructing him to stop communicating with her. Carroll responded, "I was under a mistaken impression. Thank you for letting me know. I won't contact her again. Thank you for your patience and understanding." *Id.* at 656. Gina then called the FBI back and informed them that her 14-year-old daughter had sent the package for Carroll and that she had discovered Carroll and Jane's explicit correspondence.

Despite his promise, Carroll continued to communicate with Jane. Within hours of Gina's email, Carroll told Jane, "I think your mom wrote me. She says you're 14." R. 172, Trial Tr., PageID 711. The two then resumed their sexually explicit exchanges. This included discussions of Jane watching Carroll "cum"; Carroll encouraging her to masturbate; and Carroll sending photos of his penis and ejaculate. Appellee Br. at 10. Jane also continued calling Carroll on Skype.

Meanwhile, the FBI began investigating Carroll. Agents obtained search warrants for Carroll's accounts and discovered that Carroll was engaging in sexually explicit conversations with other minors. On April 27, the FBI interviewed him, and he claimed to have stopped communicating with Jane when Gina contacted him in March. But, in reality, their correspondence did not end until the day of his FBI interview and ensuing arrest.

A grand jury charged Carroll with sexual exploitation of a child under 18 U.S.C. § 2251(a) (Count 1) and coercion and enticement under 18 U.S.C. § 2422(b) (Count 2), among other charges. The jury convicted on all counts brought to trial. And the court sentenced Carroll to 240 months for each count, with the sentences running concurrently. Carroll appeals.

II.

Carroll challenges two of his convictions: sexual exploitation under 18 U.S.C. § 2251(a) and coercion and enticement under 18 U.S.C. § 2422(b). For each conviction, he raises two challenges. We address each in turn.

A.

Carroll first challenges the sufficiency of the evidence for his sexual exploitation conviction. Reviewing de novo, we take the evidence "in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Deakins*, 152 F.4th 693, 705 (6th Cir. 2025) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). And we draw "every reasonable inference from the evidence in the government's favor." *Id.*

To convict Carroll of sexual exploitation, the government needed to show that, in or affecting interstate commerce, Carroll "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d] [a] minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Carroll argues that the government fell short because it failed to show that "Jane created pornographic images in response to Carroll's communications." Appellant Br. at 21, 26. Assuming causation is required, we disagree.

The record includes sufficient evidence that Jane produced sexually explicit images of herself at Carroll's urging. Over the course of several months, Jane and Carroll exchanged multiple sexually explicit images. For the § 2251(a) charge, the government highlighted two of these exchanges. On October 14, 2020, Carroll invited Jane "to play now." Appellee Br. at 7. Soon after, Carroll asked Jane if she would "spread" for him. *Id.* Jane said yes, and Carroll prompted her, "[d]o it" and "[l]et me see you." *Id.*; Appellant Br. at 13. Jane then sent an image

of her vagina with her legs spread open.  Carroll responded with "[b]eautiful" and "I would fit so good there."  Appellee Br. at 7; *see also* R. 174, Trial Tr., PageID 1163.

Two days later, Carroll sent Jane a photo of his penis so that she "could watch."  Appellee Br. at 7.  Jane, later that day, asked if Carroll wanted to play and said, "ik you wanna see the dildo in my p***y."  *Id.*  Carroll asked if she had "started already," and she replied, "no waiting for you."  *Id.*  He then asked, "[c]an I see," and Jane sent a photo of her vagina with a dildo inserted.  *Id.* at 8; Appellant Br. at 13–14.  Carroll responded with "[o]h yeah" and "[t]here it is."  Appellee Br. at 8; *see also* R. 174, Trial Tr., PageID 1163.  Based on "the log of [their] conversation," a reasonable juror could conclude that Jane "was taking sexual pictures of herself during the period in which she was chatting with [Carroll], rather than sending him pictures that she had already taken."  *United States v. Ogden*, 685 F.3d 600, 604 (6th Cir. 2012).  So, the conversation itself supports causation.

Carroll, however, insists that the government needed to produce additional evidence of causation—such as Jane's testimony or forensic data.  But he offers no case requiring such evidence.  And courts have upheld § 2251(a) convictions without it.  *See, e.g.*, *id.*; *United States v. Deutsch*, 2024 WL 2972810, at *2 (2d Cir. June 13, 2024); *cf. United States v. Sykes*, 65 F.4th 867, 875, 881 (6th Cir. 2023) (upholding a § 2251(a) conviction based on the messages exchanged between the defendant and victim despite the victim, at one point during trial, denying that she sent photos).

Carroll also argues that the evidence did not suffice because Jane might have sent him a photo from some pre-existing "collection" she "use[d] when chatting with Carroll or with others."  Appellant Br. at 26.  But, to sustain a conviction, the government's evidence need not "exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir.

2000) (citation omitted). And Carroll's hypothesis is not even reasonable because it lacks evidentiary support.

No physical or forensic evidence produced at trial revealed that Jane maintained a pre-existing cache of sexually explicit images. So, Carroll relies on three pieces of "evidence" to support his alternative theory: (1) the other minor victims did not explicitly say that they created their images for Carroll; (2) Jane might have reused images at times; and (3) Jane chatted with other people. Assuming all this is true, none of it disproves the government's evidence-supported theory: that Jane created the images after being prompted to do so by Carroll on October 14 and 16.

First, the other victims are not relevant here. Carroll speculates that if the other victims had created images at Carroll's behest, they would have made that explicit on the stand. That they did not, Carroll claims, shows that these victims must have sent him pre-existing sexual images of themselves. And that shows that a 14-year-old, like Jane, also could have "stored images of herself and used them in later chats." Reply Br. at 7. The gaps in this chain of reasoning are large. But even if we accepted it, it merely shows what a 14-year-old could have done, not what Jane did. Second, Carroll claims that "forensic evidence showed" that Jane herself "reused the very same sexual image in multiple chats over a period of time." Appellant Br. at 25. But the only evidence he offers is FBI testimony saying that some images Jane sent in September and January looked "very similar" to each other. R. 173, Trial Tr., PageID 986–91, 996–97. None of this shows that the October images were created on a previous date. And third, even if Jane chatted with other people, Carroll offers no evidence showing that Jane exchanged sexually explicit photos with them. So, Carroll fails to even prove his theory—much less displace the government's. His challenge fails.

B.

Carroll alternatively argues that the § 2251(a) charge was duplicitous—"that is, it set forth separate and distinct crimes in one count." *United States v. Ramamoorthy*, 949 F.3d 955, 960 (6th Cir. 2020) (citation modified). A duplicity claim must ordinarily be raised before trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(i). Carroll did not do so. Even so, "the alleged harm to the defendant's substantive rights resulting from a duplicitous indictment can be raised at trial or on appeal." *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007). A defendant may request jury instructions requiring unanimity regarding the offense of conviction to cure the alleged defect. *See id.* at 445. But Carroll didn't do that either. Nor did he object to the instructions given. Instead, he raises his challenge for the first time on appeal. So, we review for plain error.[1] *Id.* And we may overturn the conviction only if an "obvious or clear" error affected both Carroll's "substantial rights" and "the fairness, integrity, or public reputation of the judicial proceedings." *Ramamoorthy*, 949 F.3d at 960 (citation omitted).

Carroll's challenge fails at the first stage: he has not shown "obvious or clear" error. Carroll claims "duplicity" because, although the indictment referred simply to production of "any visual depiction" of "sexually explicit conduct," R. 61, Superseding Indictment, PageID 138, the government, at trial, relied on two particular images to support the § 2251(a) charge. Carroll claims that such an indictment is duplicitous because this court, among others, has held that "each production of an image in violation of § 2251(a) . . . must be charged in a separate count."

---

[1] In *United States v. Soto*, this court held that challenges to indictment defects are not "waived" but merely "forfeited" by failure to raise them before trial. 794 F.3d 635, 655 (6th Cir. 2015). As we noted in *Kakos*, however, the rule that "prejudice from a duplicitous indictment can be cured by proper jury instructions" suggests there is little "difference between reviewing an indictment for duplicity and asking whether submitting the duplicitous count to the jury created the risk of conviction by a non-unanimous verdict." 483 F.3d at 445 n.1.

Appellant Br. at 30. Yet, he offers no Sixth Circuit case that actually so holds. Indeed, his main Sixth Circuit authority is a civil case. *See Prewett v. Weems*, 749 F.3d 454 (6th Cir. 2014). Caselaw from other circuits cannot establish plain error. *United States v. Baskerville*, 164 F.4th 459, 485 n.5 (6th Cir. 2026). But the out-of-circuit cases Carroll offers are not on point either, as they all address the question of whether an indictment is multiplicitous. *See United States v. Esch*, 832 F.2d 531, 541–42 (10th Cir. 1987); *United States v. Smith*, 919 F.3d 1, 15–16 (1st Cir. 2019); *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) (per curiam). While courts have held that each production may constitute a separate violation of § 2251(a), none has held that relying on multiple images to support a single count amounts to duplicity. The "lack of binding case law that answers the question presented . . . preclude[s] our finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015); *cf. United States v. Thomas*, 2025 WL 40368, at *1, 3 (7th Cir. Jan. 7, 2025) (finding no plain error when government introduced two hard drives containing multiple images of child pornography for a single charge of possession under § 2252A(a)(5)(B)).

## C.

Next, Carroll argues that the district court erred when it instructed the jury on the coercion and enticement charge. *See* 18 U.S.C. § 2422(b). We review this claim de novo. *United States v. Lawrence*, 735 F.3d 385, 427 (6th Cir. 2013).

Carroll objects to the court's instructing the jury that Jane's "will or mental state" was "irrelevant" to the charge. R. 174, Trial Tr., PageID 1149. Specifically, Carroll argues that completed enticement, for which he was charged, requires the defendant to have changed the victim's mental state "from one of hesitation to one of agreement." *United States v. Pulido*, 133

F.4th 1256, 1270 (11th Cir.), *cert. denied*, 146 S. Ct. 396 (2025). In other words, Carroll contends that no crime can occur if the victim is willing.

A willing victim is no defense to a § 2422(b) charge. We have previously determined that a defendant can "persuade, induce, entice, or coerce a minor to engage in sexual activity even if the minor had a predilection to do so." *United States v. Harmon*, 593 F. App'x 455, 463 (6th Cir. 2014). So, the crime of enticement may occur even with a "seemingly willing minor." *United States v. Harcrow*, 135 F.4th 636, 642 (8th Cir. 2025) (per curiam) (citation omitted); *see also United States v. Dhingra*, 371 F.3d 557, 567 (9th Cir. 2004), *as amended on denial of reh'g* (July 23, 2004) ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."); *United States v. Greaux-Gomez*, 52 F.4th 426, 434 (1st Cir. 2022); *United States v. York*, 48 F.4th 494, 500 (7th Cir. 2022); *United States v. Lundy*, 676 F.3d 444, 449–50 (5th Cir. 2012). To convict, the jury did not need to assess whether Carroll moved the victim's mental state from hesitation to willingness. So, this argument fails.

D.

Finally, Carroll argues that insufficient evidence supported his § 2422(b) conviction. Reviewing de novo, we will affirm Carroll's conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Deakins*, 152 F.4th at 705 (quoting *Jackson*, 443 U.S. at 319).

Repurposing his jury-instruction challenge, Carroll argues that the evidence did not support this conviction because the government failed to show that he "changed" Jane's mind. Appellant Br. at 39. As Carroll views the evidence, Jane "was willing to produce such images," regardless of Carroll's actions. Reply Br. at 19. But Carroll again misconstrues the essential elements of

§ 2422(b).  To obtain a conviction under § 2422(b), the government needed to show that, after Carroll knew Jane was a minor, he used a means of interstate commerce to persuade, induce, entice, or coerce her to engage in an unlawful sexual activity (here, producing a visual depiction of herself engaged in sexually explicit conduct).  18 U.S.C. §§ 2422(b), 2251(a).  As discussed above, the statute does not require proof that the defendant changed the victim's mental state from reluctance to agreement.  *See Harmon*, 593 F. App'x at 463.  So, a child's willingness or "consent" does not insulate a defendant from conviction.  *Id.*; *see also Harcrow,* 135 F.4th at 642; *Dhingra*, 371 F.3d at 567; *Greaux-Gomez*, 52 F.4th at 434; *York*, 48 F.4th at 500; *Lundy*, 676 F.3d at 449–50.

Carroll offers no other ground on which he believes the government's proofs fell short. Accordingly, his sufficiency claim fails.

* * *

We AFFIRM.